# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**JAMES B.,**[1]

        **Plaintiff,**

                                        **Case No. 2:20-cv-20572**

    **v.**                             **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

        **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff James B. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On June 5, 2013, Plaintiff filed his application for benefits, alleging that he has been disabled since March 8, 2013. R. 84, 92, 151–57. The application was denied initially and upon

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

reconsideration. R. 93−97, 99−101. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 104−05. Administrative Law Judge ("ALJ") Sharon Allard held a hearing on June 23, 2015, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 26−75. In a decision dated October 22, 2015, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 8, 2013, Plaintiff's alleged disability onset date, through June 30, 2014, the date on which Plaintiff was last insured. R. 13−20 ("2015 decision").

Plaintiff timely filed an appeal from the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). R. 510−14. On December 20, 2019, United States District Judge Madeline Cox Arleo faulted the ALJ's consideration of Plaintiff's severe impairments and reversed the decision, reasoning as follows:

> Here, the ALJ did not carefully evaluate the limiting effects of any of Plaintiff's conditions other than his colon cancer. While the ALJ correctly noted that Plaintiffs treating oncologist opined that, as of November 19, 2013, Plaintiffs colon cancer did not pose any limitations as to Plaintiffs ability to engage in physical work-related activities, Tr. 340, the same oncologist incorrectly noted that Plaintiff had "no [other] physical or mental limitations" at that time. *Id.* Indeed, the ALJ herself found that the medical record showed that Plaintiff had a number of other medically determinable impairments, including "hypertension, hyperlipidemia, back and left knee pain, adjustment disorder, and depression." Tr. 15-16. By its terms, the oncologist's opinion is limited to the effect of Plaintiffs colon cancer on his ability to perform basic work activities, and expressly did not consider any other impairments. As the ALJ found that Plaintiff had a number of other impairments, at step two she was required to perform "a careful evaluation of the medical findings which describe the impairment(s)" and to then make "an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities." SSR 85-28 1985 WL 56856, at *4.
>
> Instead, the ALJ gave only a cursory review to Plaintiffs other physical impairments.[footnote omitted] In a single sentence, the ALJ disposed of all of Plaintiffs remaining impairments as non-severe in a single sentence. Tr. 19. This is a far cry from a "careful evaluation" of the medical findings in the record, as required by the governing SSR and case law. For instance, there is no discussion whatsoever concerning the Plaintiffs knee and back pain, or any functional limitations concerning those conditions, or even an assessment of why those

2

conditions had no more than a minimal effect on Plaintiffs ability to perforn1 basic work activities. The ALJ is required to provide this analysis when denying a plaintiffs claim at step two. *See Knauss v. Comm'r of Soc. Sec.*, No. 17-437, 2018 WL 1535213, at *5 (D.N.J. Mar. 29, 2018) (remanding where ALJ failed to address medical evidence supporting impairments, finding those impairments non-severe); *Ruberti v. Comm'r of Soc. Sec.*, No. 16-8977, 2017 WL 6492017, at *9 (D.N.J. Dec. 19, 2017) (remanding where ALJ concluded certain impairments were non-severe without sufficient analysis). Thus, the ALJ's determination that Plaintiff was not suffering from a "severe" impairment within the meaning of the Act was not supported by substantial evidence.

R. 524–25; *see also id.* at 525 n.3 ("Plaintiff does not contest the ALJ's conclusion as to his mental impairments. On remand, the ALJ should independently reconsider whether Plaintiff's mental impairments qualify as severe within the meaning of the Act.").

Following that remand, the Appeals Council vacated the 2015 decision and remanded the matter for further proceedings consistent with Judge Arleo's opinion. R. 531. The same ALJ held another hearing on July 16, 2020, at which Plaintiff, who was again represented by counsel, again testified, as did a vocational expert. R. 480–509. In a decision dated September 4, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 8, 2013, Plaintiff's alleged disability onset date, through June 30, 2014, the date on which Plaintiff was last insured. R. 463–73 ("2020 decision").[3] Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 4, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 6.[4] On June 8, 2021, the case was reassigned to the undersigned. ECF No. 7. The matter is ripe for disposition.

---

[3] The record does not reflect that Plaintiff filed exceptions to the ALJ's 2020 decision, making that decision the Agency's final decision. *See* 20 C.F.R. § 404.984(d).

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

II.     **LEGAL STANDARD**

   A.      **Standard of Review**

   In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

   The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli*

*v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

4

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. An ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at \*4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

such articulation, the Court "cannot tell if significant probative evidence was not credited or

simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, a court can

enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the

record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or

contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the

record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see*

*A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

      **B.**      **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

7

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.*
at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC")
and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f).
If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not
disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC,
age, education, and work experience, can perform other jobs that exist in significant numbers in
the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do
so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the
impairment or combination of impairments has lasted or is expected to last for a continuous
period of at least twelve months.

## III.   ALJ's 2015 DECISION

Plaintiff was 64 years old on March 8, 2013, his alleged disability onset date. R. 76, 85.
At step one, the ALJ found in the 2015 decision that Plaintiff had not engaged in substantial
gainful activity between that date and June 30, 2013, the date on which Plaintiff was last insured.
R. 15. At step two, the ALJ found that Plaintiff had the following medically determinable
impairments: "Colon Cancer (chemotherapy completed, no recurrence.[),] Hypertension
(controlled through non-prescription medication), hyperlipidemia (controlled through
medication), back, and left knee pain (medication prescribed), adjustment disorder, depression
by diagnosis (screening negative)[.]" R. 15–16. However, the ALJ went on to find that Plaintiff
did not have a severe impairment or combination of impairments. R. 16–19. The ALJ therefore
concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any

8

time from March 8, 2013, Plaintiff's alleged disability onset, through June 30, 2014, the date on which he was last insured. R. 20.

## IV.     ALJ's 2020 DECISION AND APPELLATE ISSUES

In the 2020 decision, the ALJ again found at step one that Plaintiff had not engaged in substantial gainful activity between March 8, 2013, his alleged disability onset date, and June 30, 2013, the date on which he was last insured. R. 465.

At step two, the ALJ found that, although Plaintiff had the medically determinable impairments of colon cancer, hypertension, hyperlipidemia, and depression, he did not have an impairment or combination of impairments that was severe. R. 466–73. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from March 8, 2013, his alleged disability onset date, through June 30, 2014, the date on which he was last insured. R. 472–73.

Plaintiff disagrees with the ALJ's step two findings and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Moving Brief,* ECF No. 20. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 22.

## V.     SUMMARY OF RELEVANT MEDICAL EVIDENCE

On December 23, 2013, Plaintiff's treating oncologist, Sophie Morse, M.D., completed a two-page, check-the-box and fill-in-the-blank form entitled, "Neoplastic Report." R. 339–41 (including fax cover sheet). On that form, Dr. Morse indicated that she had treated Plaintiff every

two weeks beginning on April 8, 2013, and had most recently examined him on November 19, 2013. R. 339. Dr. Morse noted that Plaintiff was diagnosed with high risk, stage II colon cancer (sigmoid colon tumor) status post-surgery (colectomy in April 2013) and six months of chemotherapy. *Id*. Plaintiff was due for restaging in January 2014. *Id*. Dr. Morse specifically noted that Plaintiff was status-post twelve cycles of adjuvant chemotherapy with FOLFOX regimen administered every two weeks. R. 340. Asked to describe "any other physical or mental impairment and/or limitations[,]" Dr. Morse responded, "No limitations at this time." *Id*. Asked to provide, based on her medical findings, her medical opinion regarding Plaintiff's ability to do work-related activitie, Dr. Morse opined that Plaintiff had no limitation in his ability to lift and carry, stand and/or walk, sit, or push and/or pull, nor did Plaintiff have any other limitation such as handling objects, hearing, speaking, or traveling. *Id.*

## VI.   DISCUSSION

Plaintiff contends that the ALJ erred when she denied Plaintiff's claim at step two of the sequential evaluation by finding that Plaintiff suffers no severe impairment. *Plaintiff's Moving Brief*, ECF No. 20. Plaintiff specifically argues that the ALJ applied an incorrect legal standard, erred in finding fewer medically determinable impairments in her 2020 decision than she did in her 2015 decision, and failed to comply with Judge Arleo's remand opinion, which concluded that Plaintiff in fact suffered severe medically determinable impairments. *Id.* The Commissioner disagrees, arguing that substantial evidence supports the ALJ's denial of benefits at step two of the sequential evaluation process. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 22.

"The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Therefore, "[t]he burden

placed on an applicant at step two is not an exacting one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "Although the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *Id.* (quoting SSR 85-28, 1985 WL 56856, at *3; citing *Newell*, 347 F.3d at 546). Courts must resolve any doubt as to whether this showing has been made in favor of the claimant. *Id.*; *see also Newell*, 347 F.3d at 547. While denying benefits at step two "is certain to raise a judicial eyebrow" because "step two is to be rarely utilized as a basis for the denial of benefits[,]" a reviewing court should not apply a more stringent standard of review in such cases because "a "denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." *McCrea*, 370 F.3d at 361.

In the present case, as previously discussed, the ALJ denied Plaintiff's claim at step two in her 2020 decision. R. 463–73. Plaintiff raises a number of challenges to this decision, including questioning why the same ALJ inexplicably found fewer medically determinable impairments in her 2020 decision than she did in her 2015 decision. *Plaintiff's Moving Brief*, ECF No. 20, p. 25. Plaintiff specifically notes that the ALJ found in the 2020 decision no orthopedic condition even though she had previously identified, *inter alia*, Plaintiff's back and left knee pain as medically determinable impairments. *Id.* Although the Court agrees that the ALJ's decision in this regard is awkwardly phrased, considering that the same ALJ authored both the 2015 decision and 2020 decision, R. 466 (stating that "[w]hile the prior administrative law judge's decision found the claimant's complaints of back and left knee pain to be medically determinable impairments, upon further review the analysis supports a finding that these

complaints are not medically determinable impairments for the following reasons"), this issue

does not require remand. In her 2020 decision, the ALJ explained why she did not find any

orthopedic condition to be a medically determinable impairment as follows:

> Prior to the claimant's alleged onset date, beginning in August 2005, the claimant sought treatment from Complete Care for lower back pain. Healthcare providers there diagnosed him with a lumbar strain and placed him on modified duty, limiting him to "sitting work only." The claimant continued to seek treatment for this condition through December of 2006, when he complained of worsened pain (Exhibit 1F). However, physical examination findings since his alleged onset date, including an evaluation conducted in March 2014, yielded normal musculoskeletal findings, despite the claimant's subjective complaints of back pain back and residual mild paresthesias. In fact, apart from a noted surgical scar, the claimant was described as well-nourished, well-developed and in no apparent distress. Furthermore, he presented with a soft and nontender abdomen, leading his healthcare provider to assess his condition as a malignant neoplasm of the colon, with a follow-up colonoscopy recommended. Absolutely no diagnosis or objective medical signs or symptoms regarding the claimant's subjective complaints of back pain were provided (Exhibit 17F).

> In regard to the claimant's alleged shoulder and leg pain, the record indicates that, at a follow up visit on March 10, 2015, Dr. Frino noted that Dr. Nicholas Cunicella, the claimant's family physician, prescribed him a muscle relaxant and pain medication for his shoulder and leg pain. However no objective medical signs or symptoms were noted by either physician (Exhibit 21F). Lastly, the claimant's allegation of left knee pain is also unsupported by any medical evidence, as there are no objective findings or diagnostic results that suggest any impairment involving the claimant's knee. In fact, the only mention of the claimant's knee is a history of arthroscopic surgery in 2007, well before his alleged onset date. Those same records indicate that the claimant's hypertension and hyperlipidemia were controlled (Exhibits 2F and 5F).

> The above evidence, or lack thereof, demonstrates that the claimant's allegations of shoulder, back, leg and knee pain are non-medically determinable impairments. Under SSA rules and regulations, a medically determinable impairment may not be established solely based on a claimant's allegations regarding symptoms (20 CFR § 404.1521, § 404.1529, § 416.921, § 416.929, and SSR 16-3p). Instead, the impairment must be established by objective medical evidence from an "acceptable medical source" (20 CFR § 404.1521, § 404.1502(a), § 416.921, and § 416.902(a)) that can reasonably be expected to produce the symptom(s).

> Objective medical evidence includes signs of anatomical, physiological, or psychological abnormalities that can be observed apart from the claimant's statements and that must be shown by medically acceptable clinical diagnostic

techniques. Examples of physical signs include abnormalities of gait or range of motion, and they must be shown by observable facts that can be medically described and evaluated (20 CFR 404.1502(g) and 416.902(l)). Laboratory findings also constitute objective medical evidence and include anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques (i.e., electrophysiological studies such as an electrocardiogram or electroencephalogram, etc.) and imaging studies (i.e., X-rays) (20 CFR 404.1502(c) and 416.902(g)). Here, the record shows that the claimant was prescribed medication for his alleged pain (Exhibit 21F), however, the claimant's records do not include any signs and/or laboratory findings showing the claimant had significant anatomical, or physiological abnormalities regarding his back, shoulder, leg or knee within twelve months of his alleged onset date or date last insured. Accordingly, the claimant's allegations of shoulder, leg, back and knee pain are non-medically determinable impairments.

R. 466–67. The Court finds no error with the ALJ's consideration of Plaintiff's orthopedic conditions in this regard. *See* 20 C.F.R. § 404.1521 ("[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."); *Dunn v. Berryhill*, No. CV 17-11661, 2019 WL 979242, at *6–7 (D.N.J. Feb. 28, 2019) (affirming denial of benefits at step two and finding that the ALJ properly determined, *inter alia* that the claimant's alleged mental impairments were not medically determinable where the claimant produced no psychiatric evidence other than reports properly rejected by the ALJ and where the claimant relied on subjective statements, which lacked medical support) (citations omitted). In any event, the Court notes that the ALJ went on to further consider Plaintiff's orthopedic pain when determining whether any impairment, or combination of impairments, was severe. R. 468–69 (considering knee and back pain but noting that Plaintiff "indicated that exercise and medication help relieve his pain").

While Plaintiff suggests that his shoulder, back, knee, and leg pain are severe medically determinable impairments, he simply offers that these conditions "continued to be treated with muscle relaxants (Cyclobenzaprine) by his primary care physician[.]" *Plaintiff's Moving Brief*,

13

ECF No. 20, p. 25 (citing R. 426−34[5]). However, Plaintiff points to no evidence that these conditions caused any work-related limitations. *See generally id*. Notably, "an impairment may be deemed non-severe where its effects can be effectively controlled through treatment or medication." *Glass v. Comm'r of Soc. Sec.*, No. CV 18-15279, 2019 WL 5617508, at *7 (D.N.J. Oct. 31, 2019) (citations omitted).

Plaintiff goes on to argue that the ALJ erred in finding Plaintiff's "chemo-related neuropathy" neither a medically determinable impairment nor severe. *Plaintiff's Moving Brief*, ECF No. 20, pp. 24–28. Plaintiff specifically contends that the ALJ improperly discounted his neuropathy as "stable" even though its severity "forced an[] almost full month of chemotherapy cessation[.]" *Id*. (citations omitted). Plaintiff has not persuaded the Court that this issue requires remand. The ALJ specifically considered Plaintiff's neuropathy in her 2020 decision, noting both its effect on Plaintiff during chemotherapy as well as its improvement:

> During the claimant's chemotherapy course, he complained of headaches and memory lapses, but an MRI of his brain was negative, and as of November 2013 the claimant reported he was trying to walk outside more (Exhibit 13F). In a report dated June 24, 2013, Dr. Morse indicated that the claimant should not engage in any heavy lifting. She further indicated that the *claimant was managing his nausea and neuropathy and by early October 2013, Dr. Morse assessed that the claimant's condition was stable, and that it was possible that his condition would improve to the point where he could return to work* (Exhibit 11F).
>
> In a report to Dr. Alva dated November 19, 2013, Dr. Morse advised that the claimant had completed five cycles of chemotherapy as of July 2013. However, it was noted that the *claimant had developed severe neuropathy*, a rash and a decrease in his weight. As a result, his therapy was put on hold from June 27 through July 20, 2013. It was restarted on July 29, 2013 and the claimant ultimately completed the program on October 21, 2013. In November 2013, the claimant reported increased weight and *improvement in his neuropathy symptoms*. That same month his blood pressure measure 140/76 and the results of a physical examination were

---

[5] Of the pages cited by Plaintiff in this regard, only one reflects evidence dated before June 30, 2014, *i.e.*, the date on which Plaintiff was last insured. *See* R. 426 (June and July 2015), 427 (April and June 2015), 428 (March 2015), 429 (August, September, October, and December 2014), 430 (March and June 2014), 431−32 (June 2015), 433 (July 2015), and 434 (June 2015).

14

all within normal limits (Exhibits 12F and 18F). In December 2013, a physical examination performed by Dr. Alva indicated that the claimant was doing fairly well and there was no evidence of a local recurrence (Exhibit 15F). Eight months after his surgery, the claimant was noted to be doing well with no evidence of recurrence (Exhibit 17F).

On December 23, 2013, Dr. Morse provided an assessment of the claimant's physical capabilities. *She placed no limitations on him with respect to any physical activities.* (Exhibit 16F). In January 2014, Dr. Mandel removed the claimant's port and in April 2014, no new neoplasia was detected (Exhibit 19F). Then, in March 2014, a follow-up colonoscopy was performed, the results of which were within normal limits. This, along with the results of a physical examination performed by Dr. Goldenberg later that month, led Dr. Goldenberg to conclude that there was no new neoplasma (See Exhibit 23F).

In June 2014, while the claimant still reported memory lapses, *he also reported that his neuropathy was "all gone."* He was diagnosed with a memory impairment, but as previously indicated, a prior MRI yielded no positive findings. *Four months later, when asked if he was still experiencing any symptoms associated with neuropathy, the claimant replied "not really"* (Exhibit 20F). *Records from the remainder of 2014 and into 2015 indicate that the claimant reported feeling well and that he continued to walk*. In a follow-up examination, performed in February 2015, Dr. Alva stated that the claimant remained cancer free. (Exhibit 23F). *In November 2015, the claimant reported some residual neuropathy symptoms, but also indicated he was feeling great and walking up to two hours per day.*

R. 469–70. In other words, contrary to Plaintiff's characterization of this discussion, the ALJ did not discount Plaintiff's neuropathy simply because it was stable. Instead, she specifically considered how it delayed his chemotherapy treatment for approximately one month—from June 2013 to July 2013—but went on to highlight the fact that Plaintiff had reported improvement in November 2013 and, by June 2014, he had reported that his neuropathy was "all gone." R. 471. Even if the Court assumes, for present purposes only, that Plaintiff's neuropathy was a medically determinable impairment, Plaintiff has not shown that his neuropathy met the 12 month durational requirement. *See id.*; *see also Plaintiff's Moving Brief*, ECF No. 20, pp. 24–28; 20 C.F.R. § 404.1509 (requiring impairment to last or be expected to last for a continuous period of at least twelve months); *Byrd v. Berryhill*, No. CV 17-2993, 2018 WL 2009535, at *2 (E.D.

Pa. Apr. 27, 2018) (finding that substantial evidence supported the ALJ's conclusion at step two that the claimant did not have a severe impairment where the claimant did not satisfy the duration requirement, including where pain after surgery was "well controlled" and later the "pain significantly improved") (internal quotation marks omitted).

Plaintiff also asserts that he "complained of long term tinnitus and an audiogram revealed 'mild to moderately severe, high-frequency sensorineural hearing loss' in both ears with good speech recognition (Tr. 414)." *Plaintiff's Moving Brief*, ECF No. 20, pp. 24–25. However, Plaintiff, who bears the burden of proof at step two, does not offer any substantive discussion explaining how this evidence establishes that this condition amounted to an impairment or combination of impairments that significantly limited his physical or mental ability to do basic work activities lasting twelve consecutive months during the relevant period. *See id.*; *see also* R. 414 (containing audiology consult dated November 6, 2014, reflecting, *inter alia*, that Plaintiff "reported intermittent tinnitus AU for a 'long time'"); 20 C.F.R. §§ 404.1509, 404.1520(c), 404.1521; *Dunn*, 2019 WL 979242, at *6–7. The Court will not construct Plaintiff's arguments for him. *See Padgett v. Comm'r of Soc. Sec.*, No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments.").

Plaintiff also challenges the ALJ's finding that Plaintiff's hypertension was not severe, arguing that the ALJ improperly characterized this diagnosed condition as "controlled." *Plaintiff's Moving Brief*, ECF No. 20, pp. 24–25, 27–28. Plaintiff's argument is not well taken. As a preliminary matter, the diagnosis, without more, does not establish that Plaintiff's

16

hypertension was severe: Plaintiff "was required to present evidence that these limitations significantly limited [his] ability to do basic work activities or impaired [his] capacity to cope with the mental demands of working." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007) (citations omitted). Plaintiff presented no such evidence related to his hypertension. *See generally Plaintiff's Moving Brief*, ECF No. 20. To the extent that Plaintiff complains that the ALJ found that his hypertension was not severe because it was controlled, this Court has already explained that an impairment may be found to be non-severe where medication or treatment effectively controls the impairment's effects. *Glass*, 2019 WL 5617508, at *7. In this case, the ALJ highlighted that the record made clear that Plaintiff's hypertension was managed or controlled. R. 466, 470–71. Plaintiff has pointed to no evidence that establishes that his hypertension was not controlled or that his hypertension, alone or in combination any other impairment(s), significantly limited his physical or mental ability to do basic work activities. *See generally Plaintiff's Moving Brief*, ECF No. 20. Based on this record, the Court is not persuaded that the ALJ erred in finding that Plaintiff's hypertension was not severe. *See id.*; *see also Afanador v. Comm'r of Soc. Sec.*, No. CV 15-2056, 2016 WL 3046263, at *4 (D.N.J. May 27, 2016) (finding that the ALJ properly concluded that the claimant's impairments were not severe where, *inter alia*, the claimant's hypertension was "well-controlled" and where, *inter alia*, "no evidence in the record that since alleged onset of disability Plaintiff suffered from any manifestation of high blood pressure, including no cardiovascular disease, stroke, or renal failure").

17

Plaintiff also challenges the ALJ's consideration of his mental impairments, including his medically determinable impairment of depression.[6] *Plaintiff's Moving Brief*, ECF No. 20, pp. 24–25, 28. As previously noted, the ALJ found that Plaintiff's depression was a medically determinable impairment, R. 466, but concluded that this impairment was not severe, reasoning as follows:

> In terms of the claimant's mental impairment, records from July 2013 evidence that the claimant reported feelings of sadness, as a friend of his recently fell ill and passed away. As a result, the claimant requested to see a mental healthcare provider, however a depression screening yielded negative results and it was determined that the claimant did not further require any further intervention (Exhibit 21F). In March 2014, despite complaints of memory issues and some residual depression, an examination of the claimant resulted in normal findings apart from a surgical scar. Those findings included observations that the claimant was well-nourished, well-developed and in no apparent distress. Inspection of his abdomen found it to be soft and nontender, ultimately leading to an assessment of malignant neoplasm of the colon with instructions to seek a follow-up colonoscopy. Again, no mental health diagnosis or remarkable mental health findings were made (Exhibit 17F).
>
> In June 2014, the claimant complained of memory issues, but no objective findings were made and no related diagnosis followed (Exhibit 20F). Three months later, another depression screening yielded negative results (Exhibit 21F). However, in December 2014, after reporting that he felt depressed following his mother's passing, the claimant was diagnosed with an adjustment disorder by a licensed clinical social worker (Exhibit 21F). Similarly, after a mental status examination was performed in February 2015, a medical doctor diagnosed him with depression (Exhibit 21F). *However, it is worth noting that his depression diagnosis came approximately six-months after his date last insured. Moreover, apart from his subjective reports of depression and memory problems, the record contains no significant clinical findings or objective evidence to support more than minimal limitations due to the claimant's depression and/or memory loss.*

R. 470–71 (emphasis added). The ALJ went on to consider Plaintiff's limitations, if any, in the four broad functional areas known as the "paragraph B" criteria, but found no limitation or only mild limitations, as follows:

---

[6] Plaintiff did "not contest the ALJ's conclusion as to his mental impairments" at the time of the 2015 decision. R. 525 n.3.

In understanding, remembering, or applying information, the claimant had a mild limitation. The claimant testified that with the exception of the two to three months he was in chemotherapy, he was able to drive. Additionally, once he completed chemotherapy, he resumed household chores, yard work, and cooking. Lastly, the record shows that the claimant was able to provide information about his health, respond to questions from medical providers, and there is no mention of any issues with the claimant's short- or long-term memory (Exhibits 17F, 20F and 21F).

The next functional area is social functioning. In this area, the claimant had no limitation. The claimant testified that he has resumed his church and social activities, including vacations to Jamaica and Aruba. Finally, the medical evidence shows that the claimant had a good rapport with providers, was described as pleasant and cooperative, had good interactions with nonmedical staff, and appeared comfortable during appointments (Exhibits 17F, 20F and 21F).

The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. In this area, the claimant had a mild limitation. The claimant has complained of memory problems. He had been prescribed medication to help him sleep, which may have had some side effects. However, an MRI of the claimant's brain was negative (See Exhibit 12F). Lastly, the record fails to show any mention of distractibility.

Finally, the claimant had no limitations in his ability to adapt or manage himself. The objective evidence in the record showed the claimant to have no problem getting along well with providers and staff and no problems with temper control (Exhibits 17F, 20F and 21F). Furthermore, the claimant testified that, once he completed chemotherapy, he resumed household chores, yard work, cooking and driving.

Because the claimant's medically determinable mental impairment caused no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it was nonsevere (20 CFR 404.1520a(d)(1)).

R. 472. The Court finds no error with the ALJ's reasoning in this regard.

Plaintiff nevertheless challenges the ALJ's consideration of this issue, arguing that, even accepting the ALJ's assessment that Plaintiff had no more than "mild" limitations in his ability to understand, remember, and apply information and a mild limitation in his ability to concentrate, persist, or maintain pace, "these mild limitations exceed the *de minimis* ("no more than slight") standard" and that "once plaintiff suffers mild restrictions in these areas, he proves a severe

depressive condition." *Plaintiff's Moving Brief*, ECF No. 20, p. 28. Plaintiff's arguments are not well taken. Plaintiff has cited no authority, *see generally id*., to support his apparent assertion that mild limitations in two of the broad functional areas establishes that such limitations "significantly limit[] [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). Notably, this Court has previously upheld an ALJ's finding that a claimant's mental impairments were non-severe and properly denied benefits at step two where the claimant had no more than mild limitations in the four functional areas. *Marrollo v. Comm'r of Soc. Sec.*, No. 1:19-CV-14106, 2020 WL 3046317, at *7–8 (D.N.J. June 8, 2020) ("The ALJ here, however, did not rely upon the stability of Plaintiff's mental impairments in an impermissible way. The ALJ detailed the medical evidence which demonstrated only mild limitations in the four functional areas, and well as Plaintiff's self-reports of his daily activities and general lifestyle, all of which supported the conclusion that Plaintiff maintained the capacity to perform basic work activities on a sustained basis."); *cf. Younge v. Berryhill*, No. CV 16-5271, 2017 WL 2978758, at *11 (E.D. Pa. May 31, 2017) ("[W]e find substantial evidence supports the ALJ's determination that plaintiff's medically determinable mental impairment is non-severe and causes no more than a mild limitation in any of the first three functional areas and no episodes of decompensation of expended duration in the fourth area.").

Finally, to the extent that Plaintiff suggests that the ALJ erred at step two because she did not consider his impairments in combination, *Plaintiff's Moving Brief*, ECF No. 20, pp. 25, 28, this Court disagrees. The ALJ expressly stated that she considered Plaintiff's impairments in combination but nevertheless concluded that Plaintiff did not have a severe impairment or combination of impairments. R. 467, 471–72. This Court has no reason to doubt that the ALJ considered the combination of Plaintiff's impairments. *Cf. Morrison ex rel. Morrison v. Comm'r*

*of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008) ("The ALJ, however, explicitly indicated a number of times that he was considering the impairments in combination. . . . We see no reason not to believe him."). Moreover, as discussed in more detail above, the ALJ also considered those conditions that she did not find to be medically determinable when considering whether Plaintiff suffered from a severe combination of impairments. R. 468. This record therefore does not establish that remand is required on this basis.

## VII.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  February 16, 2023                    *s/Norah McCann King*
                                        NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE